IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

        Plaintiff,

   Vs.                   Nos.  05-40017-02-SAC
                                 08-4009-SAC

SERIGNE NDIAYE,

        Defendant.


MEMORANDUM AND ORDER

The case comes before the court on the defendant's Motion
under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Dk.
103). One of two defendants named in a single count drug trafficking
indictment that charged possession with the intention to distribute
approximately 1025 pounds of marijuana, the defendant, Serigne Ndiaye,
went to trial on this charge. After deliberating less than two hours on
August 18, 2005, the jury returned a guilty verdict. The defendant filed a
timely motion for new trial (Dk. 80) challenging the sufficiency of the
evidence and arguing the court erroneously admitted evidence that the
defendant's cellular telephone called and received calls from two phone
numbers of subscribers having Hispanic surnames in Phoenix, Arizona.

The district court denied the defendant's motion, (Dk. 82), and subsequently sentenced the defendant to a term of 63-months' imprisonment after reconsidering its denial of the safety valve adjustment.

The defendant appealed his conviction and sentence. (Dk. 90). His appointed counsel at trial continued to represent the defendant on appeal. His counsel filed an *Anders* brief and moved to withdraw from the case. The defendant filed no response to the *Anders* brief. Agreeing with defense counsel that the record of appeal did not present any non-frivolous issue, the Tenth Circuit dismissed the defendant's appeal and granted counsel's motion to withdraw. (Dk. 99). The Tenth Circuit's order and judgment was filed October 2, 2006.

## TIMELINESS OF 28 U.S.C. § 2255 MOTION

As amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255 includes a one-year limitation period for federal prisoners to file § 2255 motions. *United States v. Hurst*, 322 F.3d 1256, 1259 (10th Cir. 2003). For purposes of this case, "[t]he limitation period runs from . . . the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(¶ 6). When a direct appeal is taken, "a criminal conviction becomes final when the Supreme Court affirms it on direct

review, denies certiorari, or (in the absence of a certiorari petition) the time for filing a certiorari petition expires." *United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006) (citing *Clay v. United States*, 537 U.S. 522, 527 (2003)).

Accordingly, the defendant had 90 days from the Tenth Circuit's entry of judgment on October 2, 2006, to file a petition for certiorari. *See* Sup. Ct. R. 13(1). The period does not run from the issuance date of the circuit court's mandate. *See* Sup. Ct. R. 13(3). Thus, the 90-day certiorari period expired on January 2, 2007, after applying Sup. Ct. R. 30(1).

The defendant asks the court to apply the prison mailbox rule. This rule from *Houston v. Lack*, 487 U.S. 266, 276 (1988), "holds that a *pro se* prisoner's notice of appeal will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents." *Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005). The Tenth Circuit extended this rule to an inmate's *pro se* filing of his initial petition for relief under 28 U.S.C. § 2255, *United States v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999), as well as under 28 U.S.C. § 2254, *Marsh v. Soares*, 223 F.3d 1217, 1218 n. 1 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194 (2001). In *Gray*, the court relied on the certificate of

3

service date appearing in the petitioner's § 2255 motion, 182 F.3d at 766, and in *Marsh*, the court relied on the date of the movant's signature.

The defendant's motion bears a certificate of service date of December 30, 2007. (Dk. 103). On his form motion, the defendant executed his declaration under penalty of perjury on December 30, 2007. (Dk. 103-2). Following the liberal approach taken in *Gray* and *Marsh*, the court will accept December 30, 2007, as the date on which he gave his motion to prison authorities for mailing. Thus, the court finds the defendant's § 2255 motion was timely filed.

**GENERAL § 2255 STANDARDS**

"Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not." *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 547 U.S. 1097 (2006). Consequently "failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." *United States v. Barajas-Diaz*, 313 F.3d 1242, 1245 (10th Cir. 2002). To overcome this procedural bar, the movant must establish either good cause for not raising the issue earlier and resulting actual prejudice to his defense from the court's failure to consider this claim, or a fundamental

miscarriage of justice from not considering the claim. *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied*, 544 U.S. 904 (2005). Good cause may be met by showing a claim that "was so novel that its legal basis [was] not reasonably available to counsel" or "by showing that counsel rendered constitutionally ineffective assistance." *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (citations and quotation omitted). Consequently, if the defendant can demonstrate that he received ineffective assistance of counsel, he will have established the requisite cause and prejudice to overcome application of the procedural bar. Because the defendant did not raise any of his § 2255 claims on direct appeal, they are procedurally barred unless he can show he received ineffective assistance of counsel.

**STANDARDS FOR DETERMINING EFFECTIVENESS OF COUNSEL**

The essence of an ineffective-assistance claim is that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Williamson v. Ward*, 110 F.3d 1508, 1513-14 (10th Cir. 1997) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986)). To prevail on a claim of ineffective assistance of counsel, the defendant must

meet a two-pronged test:  first, "that his 'counsel's representation fell below an objective standard of reasonableness,' *Strickland v. Washington*, 466 U.S. 668, 688 (1984)," and second, "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id.* at 694."  *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2005).  As there are two prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland v. Washington*, 466 U.S. at 697.

With regard to the first prong of the objective reasonableness of counsel's representation, "'[t]he Supreme Court has recognized that because representation is an art and not a science, even the best criminal defense attorneys would not defend a particular client in the same way.'" *Fields v. Gibson*, 277 F.3d 1203, 1217 (10th Cir.) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir.1995) (en banc) (alterations, quotation marks, and citations omitted), *cert. denied*, 516 U.S. 856 (1995)), *cert. denied*, 537 U.S. 1023 (2002).  To be constitutionally deficient, defense counsel's performance must be "completely unreasonable." *Id.*; *see Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir.1999), *cert. denied*, 528

6

U.S. 1167 (2000). Thus, a defendant may prove this prong by showing a counsel's conduct was not "within the wide range of competence demanded of attorneys in criminal cases." *United States v. Blackwell*, 127 F.3d 947, 955 (10th Cir. 1997) (quotation and citations omitted). A court's review of the attorney's performance must be highly deferential. *Strickland*, 466 U.S. at 689. In its evaluation of such claims, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005).

The second prong addresses whether counsel's constitutionally ineffective performance affected the outcome of the trial. To prove this prejudice requirement, the defendant "must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Boyd v. Ward*, 179 F.3d at 914. When the allegation is ineffective assistance at trial, a court must "determine whether there is a reasonable probability the jury would have had reasonable doubt regarding guilt." *Id.* (citations omitted). "A reasonable probability is a

7

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The prejudice defendant must demonstrate is by less than a preponderance of the evidence: a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of trial." *Snow v. Sirmons*, 474 F.3d 693, 719-720 (10th Cir. 2007) (quoting *Fisher v. Gibson*, 282 F.3d 1283, 1307 (10th Cir. 2002)). The court looks at the totality of the evidence in assessing prejudice. *Boyd*, 179 F.3d at 914.

**EVIDENTIARY HEARING**

The defendant asks for an evidentiary hearing on his motion. (Dk. 103). Under 28 U.S.C. § 2255, "to be entitled to an evidentiary hearing . . . [defendant] must 'allege[ ] facts which, if prove[n], would entitle him to relief.'" *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir. 2001). "[T]he allegations must be specific and particularized, not general or conclusory." *Hatch*, 58 F.3d at 1471. If, however, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," this court need not grant defendant an evidentiary hearing because the factual matters raised by the defendant's § 2255 petition may be resolved on the

record before the court.  *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir.1988).  For the reasons explained in this order, the court finds that the factual questions in dispute need not be resolved for the matters of record conclusively establish the defendant is not entitled to relief.  The court denies the defendant's request for an evidentiary hearing.

**DEFENDANT'S CLAIMS**

The court groups the defendant's claims into the following areas:  (1)  failure to secure an interpreter; (2) denial of the defendant's the right to testify; (3) failure to investigate the case and interview the co-defendant; (4)  erroneous advice that the charged offense was a misdemeanor; and (5) failure to challenge the officers' false testimony about the defendant's post-arrest statements.  The government responds that the defendant's claims are only conclusory assertions lacking specificity, legal authority, and factual support as to overcome the strong presumption in favor of the reasonableness of his counsel's professional assistance.  The government also attaches an affidavit from the defendant's appointed counsel disputing the defendant's assertions.  In reply, the defendant submits an unsworn declaration pursuant to 28 U.S.C. § 1746 that supports some of his assertions.

*INTERPRETER*

The defendant argues he repeatedly asked his attorney for the help of an interpreter so that he could assist with his defense, understand the legal proceedings, and testify at trial. The defendant's trial counsel avers:

> Petitioner alleges that I failed to provide a translator to assist him in preparing for trial and to assist him at trial of the case. The defendant spoke English and did not request the services of a translator until after the trial was concluded. At his request I filed a motion with the court setting out his request that a translator be provided at sentencing. The district court denied that motion because it found that a translator was not necessary. I was able to communicate with the defendant during the period of my representation.

(Dk. 105-2, ¶ 6). In his subsequent declaration, the defendant states:

> Specifically, I told Mr. Kessler, that I needed the assistance of an interpreter to explain correctly my statements to the law enforcement; and the law enforcement's statements to me. Mr. Kessler agreed, but continued spinning me off, even during pre-trial, trial, until at sentencing of the above cause.

(Dk. 110, ¶ 2).

At the Rule 5 hearing, the defendant did not request an interpreter and did not conduct himself in a manner as to indicate that he did not speak English or that he spoke primarily a language other than English. The defendant answered the magistrate judge's background questions directly and appropriately and appeared to have no difficulty

communicating his intentions to his appointed counsel. The magistrate judge proceeded immediately with the detention hearing on the defendant's personal request communicated through his counsel. Throughout the hearing, the defendant's counsel appeared to have no difficulty in understanding his client's requests or in presenting his client's proffer and likewise demonstrated no reluctance in complying with his client's requests. At the hearing, the defendant told the magistrate judge that he had a fifth grade education, but now he contends he "did not finish first grade." (Dk. 106-2, p. 2). In his proffer, the defendant included that he had resided in Atlanta, Georgia, for at least six years, and that his wife operated a business in Atlanta.

The record shows no request from the defendant for an interpreter until at sentencing. The trial court did not observe anything during the trial that indicated the defendant did not understand the proceedings or was unable to communicate or to assist his counsel in the defense of the case. At his client's urging, defense counsel filed the motion for an interpreter just before the sentencing hearing. The sentencing court denied the motion after discussing it with counsel in chambers and hearing the parties' presentation in the courtroom. Satisfied that the defendant was

able to speak and understand English so as to communicate with his counsel, to assist with his defense, and to understand the proceedings, the court denied the defendant's motion.

While the defendant's declaration addresses what he told his counsel, it fails to establish the facts that the defendant speaks only or primarily a language other than English and, as a result, his comprehension of the proceedings and his communication with counsel were inhibited. *See United States v. Black*, 369 F.3d 1171, 1174 (10th Cir.), *cert. denied*, 543 U.S. 937 (2004). The defendant does not refute his former counsel's affidavit that the defendant spoke English and that counsel was able to communicate with the defendant during the representation. When defense counsel advanced the defendant's request for an interpreter, the trial court denied the request finding that the defendant did not need one. So, the defendant could not have been prejudiced by his counsel's failure to request an interpreter earlier. In sum, the defendant's declaration fails to establish that he was entitled to a translator under the terms of 28 U.S.C. § 1827 or that he was prejudiced by the denial of a translator.

*RIGHT TO TESTIFY*

12

The defendant argues that he wanted to testify at trial but that his counsel refused to allow him. The defense counsel's affidavit presents a different account of this issue:

> 7. I discussed with the defendant his right to testify at trial or, should he choose to do so, his right to remain silent. He never told me that he wished to testify at trial and I did not tell him to "shut up" or that he could not testify at trial. We discussed the advantages and disadvantages of testifying and he chose not to testify. We discussed his right to testify not only prior to trial but during trial and at the close of the governments case. He voluntarily and knowingly decided not to testify.

(Dk. 105-2, p. 2). In his declaration, the petitioner replied:

> 4. It is not true that trial counsel discussed my right to testify or not to. On numerous occassions [sic], I told my lawyer that I needed to tell the jury my situation. Defense counsel agreed, but never delivered, and when I insisted, he filed a motion for an interpreter for sentencing. Had I testified I would have told the jury that my voice was not in the telephone recording, that I have never being [sic] to the police station, and that I have never been convicted of anything in my life.

(Dk. 110, p. 2).

"A criminal defendant has a constitutional right to testify in his own behalf at trial. The decision whether to testify lies squarely with the defendant; it is not counsel's decision." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004) (internal citation omitted), *cert. denied*, 544 U.S. 928 (2005). If a trial counsel overrides a defendant's desire to testify, then

counsel's conduct violates the objective standard of reasonableness and

the first prong of *Strickland* is met. *United States v. Williams*, 139 Fed.

Appx. 974, 977 (10th Cir. 2005) (citing *United States v. Teague*, 953 F.2d

1525, 1534 (11th Cir.), *cert. denied*, 506 U.S. 842 (1992)). Because of the

conflict between counsel's affidavit and petitioner's declaration on this

point, the court will assume that counsel rendered ineffective assistance of

counsel by refusing the defendant's request to testify.[1]  The burden

remains with the petitioner, however, to prove prejudice, that is, "a

reasonable probability that, but for counsel's unprofessional errors, the

---

[1]The trial record is consistent with counsel's affidavit and not the
defendant's declaration.  At a bench conference after the government
rested, the court asked defense counsel what he was "going to do?"  (Dk.
96, p. 119).  The following exchange then occurred:
> MR. KESSLER:  Your Honor, I'd like to talk to him one more minute,
> but he's indicated he does not wish to testify.  We have no other
> witnesses to call, so I don't think we'll be presenting anything.
> THE COURT:  If you'd be kind enough to talk to him now, or do you
> need to have a recess?
> MR. KESSLER:  I just want to verify.  He told me before this witness
> he would not want to testify.  I just want to verify that.
> THE COURT:  Why don't you do that, please, . . . .

*Id.* Defense counsel later announced in open court that the defendant
would not call witnesses or present any further evidence and that the
defendant rested.  *Id.* at 121.  The defendant voiced no objection and
expressed no surprise to his counsel's announcement.  *See United States
v. Janoe*, 720 F.2d 1156, 1161 n.9 (10th Cir. 1983) (holding no error based
on asserted denial of the defendant's right to testify where "defendant
made no objection to his attorney's statements that defendant would not
testify and made no request to testify"), *cert. denied*, 465 U.S. 1036 (1984).

result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The petitioner has failed to show prejudice from his counsel's actions. As set forth in Mr. Ndiaye's declaration, the testimony he sought to introduce would not have challenged or rebutted any of the critical evidence in the case. He avers that he would have testified that his voice did not appear on the "telephone recording." This testimony would have been largely insignificant, as no recordings of telephone calls were discussed, identified, or admitted at trial. Nor was there any suggestion of such telephone recordings even existing. The evidence at trial was that between a cell phone subscribed to Mr. Ndiaye and two cell phones subscribed to different persons in Phoenix, Arizona, calls were exchanged. While the names of the persons in Phoenix were known, law enforcement was unable to contact or locate them. Through effective cross-examination, the defense counsel developed that the records revealed only the cell phone numbers and the date and duration of the calls, that the records did not disclose the persons who actually used the cell phones, and that the government had no additional evidence on what was said during those calls. The government introduced this evidence to prove at

15

most that a cell phone subscribed to the defendant was used to communicate repeatedly between the 14th and 17th of March with two persons having Spanish surnames who lived in Phoenix, Arizona. The defendant also avers he would have testified that he had never been to a police station or "convicted of anything."[2] The government did not introduce any evidence of prior arrests or convictions. Thus, the defendant's declaration fails to come forth with proof necessary to prove the prejudice prong.

The court also will assume for the sake of argument the defendant would have testified that his co-defendant Ebrima Tunkara was the person who had used his cell phone to speak with the contacts in Phoenix, Arizona. Even with this assumed testimony, the defendant is unable to carry his burden of prejudice. First, his co-defendant Tunkara was acquitted of this same charge in a separate trial conducted just the week before the defendant's trial. Second, the evidence at trial was that the defendant gave several versions about the offense in post-arrest

_____

[2]The presentence report showed the defendant had a prior conviction for using another person's identity to obtain a driver's license. (Dk. 87, p. 4). This conviction would have been admissible to impeach the defendant's testimony about no prior convictions and may have been admissible even as impeachment evidence under Fed. R. Evid. 608(b).

statements to officers, and his testimony on Tunkara's use of his cell phone would have been consistent with only one of those versions. Indeed, the defendant first told Agent Elizabeth Dubois-Marshall that Tunkara was just along for the ride, but in a second account of the offense to Ms. Marshall the defendant said Tunkara had told him to drive to Phoenix and was the "driving force behind" the travel plans, the receiving of the boxes, and the delivery of them. (Dk. 96, p. 103). Third, in the first telling of the offense to Agent Marshall, the defendant said he didn't know what was actually in the boxes but that he did know "it was something illegal." *Id.* at 102. The defendant also said that "he did not think it was drugs." *Id.* Fourth, Agent Marshall testified the smell of raw marijuana at the scene was "overwhelming," and she asked the defendant if he could not smell it, and the defendant answered that he "did not." *Id.* at 103-04. Agent Marshall also recalled that the defendant explained he had never smoked marijuana and had never before seen it. *Id.* at 104. The defendant does not address how his testimony on Tunkara using his cell phone would have affected the jury's consideration of this compelling evidence on the defendant's knowledge.[3] Considering Tunkara's acquittal, the defendant's contradictory

_____

[3]The defendant erroneously believes the government's "strongest evidence" was the cell phone records, (Dk. 106-2, p. 2), as opposed to the

17

post-arrest statements, the defendant's prior admission about the boxes containing something illegal and the strong smell of marijuana in the van, the court is convinced there is no reasonable probability of the defendant's testimony on Tunkara's use of the defendant's cell phone altering the outcome of the defendant's trial.

*INVESTIGATE CASE AND INTERVIEW CO-DEFENDANT*

The defendant faults his counsel with not requesting and obtaining the recordings of those calls made from and to his cell phone between March 14 and March 17.  The court treats this allegation as frivolous because there is no evidence of such recordings ever existing. Agent Dubois-Marshall testified that beyond the records showing the time and date of the cell phone calls the government had no additional evidence concerning the content of the cell phone conversations on those days.  The defendant offers no argument or basis for believing any recordings of these conversations to have existed.  Defense counsel's failure to obtain recordings not proven to even exist is hardly unreasonable.  The defendant complains that his counsel failed to secure an investigator, but he does not allege how an investigator would have helped in preparing his defense and

defendant's own post-arrest statements.

how the defendant was accordingly prejudiced in not having an investigator. Without such arguments and proof, the defendant's claim fails to get out of the gate.

The defendant's claim that his counsel failed to interview the co-defendant Tunkara is similarly deficient. In his declaration, the defendant avers:

> Had he investigated this case, counsel would have found out that the voice on my telephone number is Ebrima's language, which I do not speak. Had counsel asked Ebrima, if I spoke his native tongue, counsel would have confirmed that Ebrima used my cell phone to make calls prejudicial to my family's life.

(Dk. 110, ¶ 3). The defendant's declaration does not address whether Tunkara would have spoken with the defendant's counsel before or after his trial which was severed because of the *Bruton* problem created by the defendant's post-arrest statements. It further fails to address with the specificity needed for judicial review whether Tunkara would have testified, what Tunkara would have said, and how that evidence would have undermined confidence in the outcome of the defendant's trial. The defendant has not presented an affidavit from Tunkara. The defendant's claim fails on both performance and prejudice prongs.

## *ERRONEOUS ADVICE ON THE CHARGE*

The defendant summarily accuses his counsel of advising him that the case against him was a misdemeanor charge. The defendant does not reply to his former counsel's averment that: "The defendant was informed at his arraignment and first appearance what the charges against him were and that the charge was a felony. I at no time informed the defendant that the charge against him was a misdemeanor." (Dk. 105-2, ¶ 4). From its review of the recording of the defendant's Rule 5 proceeding, the court is satisfied that the defendant was fully informed of the potential penalty he faced on this drug charge. The magistrate judge reiterated the seriousness of the charged offense and the substantial amount of marijuana involved in the offense as part of his bench findings in support of detention. Because the counsel's affidavit conclusively refutes the defendant's summary assertion and because the defendant offers no argument or proof of prejudice on this claim, the defendant is entitled to no relief on this claim.

## *OFFICERS' FALSE TESTIMONY ABOUT THE DEFENDANT'S POST-ARREST STATEMENTS*

The movant stands on the mere assertion that his trial counsel "never challenged false statements by police and attributed to petitioner." (Dk. 103-2, p. 4). The court has not found in Ndiaye's other filings any

further argument explaining or developing this claim. This bare allegation raises no meritorious § 2255 claim. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (even pro se plaintiffs must allege sufficient facts on which to base a cognizable legal claim, and conclusory allegations will not suffice). Counsel avers:

> The defendant asserts in his petition that I did not challenge false statements made by police officers. I do not know what statements he believes were false but all officers that testified at trial were cross examined regarding their statements and testimony.

(Dk. 105-2, ¶ 5). The trial transcript confirms that defense counsel reasonably and adequately cross-examined officers and agents on what the defendant told them at the scene. The defendant's claim is without merit.

### *OTHER INSTANCES OF ALLEGED INEFFECTIVE ASSISTANCE*

Ndiaye's *pro se* § 2255 filings are replete with other random, conclusory, disconnected, disjointed, and unsupported assertions about the ineffectiveness of his counsel. The defendant does not develop any of these assertions into a cognizable claim to which the government could prepare an adequate response or on which the court could exercise proper judicial review. While Ndiaye's § 2255 pleadings are entitled to a liberal construction, the court is "not required to fashion Defendant's arguments

21

for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Thus, the defendant's conclusory allegations are insufficient to support an ineffective assistance of counsel claim. *See United States v. Thompson*, 66 Fed. Appx. 837, 839, 2003 WL 21310859 at *1 (10th Cir. 2003).

Finally, in viewing all of the defendant's allegations of ineffectiveness, both individually or collectively, the court is satisfied that the defendant has not shown that he suffered any prejudice due to his counsel's conduct, as is necessary to satisfy the second prong of the *Strickland* standard. The court thus concludes for the reasons stated herein that petitioner is entitled to no relief on his application under 28 U.S.C. § 2255.

IT IS THEREFORE ORDERED that the defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Dk. 103) is denied.

Dated this 3rd day of June, 2008, Topeka, Kansas.

s/ Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge